UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Sheida Hukman,

        Plaintiff

  v.

Snackers Sinclair, Inc.,

        Defendant

Case No. 2:23-cv-0501-CDS-NJK

**Order Granting Defendant's Motion for Summary Judgment and Closing Case**

[ECF Nos. 34, 35]

      This is a civil rights action brought by plaintiff Sheida Hukman, alleging that she was wrongfully terminated from her employment with Snackers Sinclair, Inc. (hereinafter, Harman[1]). Specifically, she brings claims alleging Title VII of the Civil Rights Act of 1964 (Title VII) violations based on national origin, as well as harassment and retaliation under that Act, and wrongful termination. *See* Compl., Def.'s Ex. A, ECF No. 35-1.[2] Defendant Harman moves for summary judgment, arguing that Hukman's employment ended due to insubordinate, unsafe, and inappropriate conduct. *See generally* ECF No. 35. Harman argues Hukman does not, and cannot, proffer sufficient evidence to the contrary. I agree. Accordingly, I find that Hukman fails to create a genuine dispute of fact for any of her claims, so I grant Harman's motion for summary judgment. I kindly direct the Clerk of Court to enter judgment in favor of the defendant and to close this case.

---

[1] Defendant notes that Snackers Sinclair, Inc., is improperly named in this action and that the proper defendant is Harman Unlimited, Inc. ECF No. 35 at 1. The court acknowledges this information and will enter judgment accordingly.

[2] The complaint was allegedly attached to the petition for removal. *See* ECF No. 1 at 2–3 (referencing complaint at Exhibit 1). However, no exhibit is attached to the petition. For clarity of the record, the Clerk of Court is directed to file a copy of the complaint (Compl., Def.'s Ex. A, ECF No. 35-1) on the docket.

I. Background

This action was initiated by Hukman in the Eighth Judicial District Court, Clark County, Nevada in December of 2022. Compl., Def.'s Ex. A, ECF No. 35-1. Hukman, who states she is a Middle Eastern woman of Kurdish descent from Iraq, alleges she was unlawfully terminated from her work as a cashier at Snackers, a Las Vegas convenience store. *Id.* at 5.[3] Harman is the Nevada corporation that owns and operates Snackers. ECF No. 35 at 3.

The parties do not dispute that Harman hired Hukman to work at Snackers in August of 2021. Compl., Def.'s Ex. A, ECF No. 35-1 at 6; Employment Record, Def.'s Ex. 3, ECF No. 35-3 at 2; ECF No. 42 at 4.[4] The parties also do not dispute that Hukman's employment was terminated in December of 2021. Compl., Def.'s Ex. A, ECF No. 35-1 at 9; Employment Record, Def.'s Ex. 3, ECF No. 35-3 at 2. The reason for her termination is at the heart of this action.

Harman argues that Hukman was terminated in December of 2021[5] after Snackers discovered she was either sitting down or sleeping during her December 18, 2021 night shift, amongst other issues, such as Hukman making allegations against and about her manager, Bill Boggs, and other Snackers employees. *See* Text messages, Def.'s Ex. E, ECF No. 35-5; 12/25/21 Email, Def.'s Ex. F, ECF No. 35-6; 12/27/21 Email, Def.'s Ex. G, ECF No. 35-7. Those include allegations against employee Tiffany Bronson, ranging from Bronson obtaining someone "to put [Hukman] to sleep" to an alleged conspiracy between Bronson and another employee to use "chemical poisoning to put [Hukman] to sleep." Def.'s Ex. E, Text messages, ECF No. 35-5; Def.'s

---

[3] A complaint is not evidence. *See Moran v. Selig*, 447 F.3d 748, 759–60, n.16 (9th Cir. 2006) (An unverified complaint "cannot be considered as evidence."). The court cites to the complaint to provide helpful background information and to show which facts are not in dispute for judicial efficiency purposes. However, in resolving the motion, the court relies only on admissible evidence. *Orr v. Bank of Am.*, 285 F.3d 764 (9th Cir. 2002) (holding that a trial court can consider only admissible evidence in ruling on a motion for summary judgment).

[4] Hukman filed her opposition twice. *See* ECF Nos. 40 (memorandum); 38 (exhibit to memorandum); 42 (memorandum and exhibit filed as one document). The documents are substantially similar and raise duplicative substantive arguments. For ease of the record, I only cite to ECF No. 42 herein, and strike ECF Nos. 38 and 40 as duplicative.

[5] The parties do not dispute that Hukman was terminated on December 27, 2021. *See* Employee Profile, Def.'s Ex. C, ECF No. 35-3 at 2 (stating termination date was December 27, 2021); Compl., Def.'s Ex. A, ECF No. 35-1 at 9 (complaint alleging Hukman received a message on December 27, 2021 not to report to work because her employment had been terminated).

Ex. G, 12/27/21 Email, ECF No. 35-7. In opposition to the summary judgment motion, Hukman argues that she was subjected to "various forms of discrimination, harassment and retaliation[.]" ECF No. 42 at 4. To support this argument, Hukman recounts several interactions with other Snackers employees. For example, she complains about an encounter with "Ms. Branson" who allegedly arrived for her shift 45 minutes early, then proceeded to yell at Hukman while she was making coffee. *Id.* Hukman further alleges that Branson asked her to violate OSHA (Occupational Safety and Health Administration) standards by reusing liquid in the Frazel machine. *Id.* Without naming the person involved, she also claims that Branson was given authority to harass employees, claiming Branson had subjected her to "constant harassment and discrimination …. because of [her] national origin and where [she came] from." *Id.* at 5. Hukman also alleges that Branson is "very well known among [both past and present] Harman Unlimited employees" to have issues with other employees "who have an accent and [are] non-american."[6] *Id.* at 3. Hukman further states that when she was hired, she was promised overtime. *Id.* at 2. While unclear, it appears that Hukman was not given overtime assignments, whereas employees of other races[7] were given such hours. ECF No. 42 at 2, 4, 14–15.

      In reply, Harman argues that Hukman's opposition to their summary judgment motion demonstrates that her claims fail as a matter of law, arguing she failed to provide any evidence to show she engaged in protected activity, among other deficiencies. *See* ECF No. 43 at 2.

II.      **Legal standard**

      Rule 56(c) provides that summary judgment must be granted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those which may affect the

---

[6] The Ninth Circuit has noted that one's "[a]ccent and national origin are obviously inextricably intertwined in many cases." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1195 (9th Cir. 2003), *opinion amended on denial of reh'g*, 2003 WL 21027351 (9th Cir. May 8, 2003).

[7] These individuals are identified as follows: (1) "U.S," which the court liberally construes as a U.S. citizen; (2) Hispanic; (3) African-American; (4) ULN, which the court cannot discern; and (5) African-American. ECF No. 42 at 4.

3

outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted).

The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, then the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). All reasonable inferences must be drawn in the non-moving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). However, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted).

III.   Analysis

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees based on national origin. 42 U.S.C. § 2000e-2(a). Hukman brings a Title VII action, alleging discrimination and harassment based on national origin (disparate treatment), as for as retaliation for complaining. *See* Compl., Def.'s Ex. A, ECF No. 35-1. Hukman fails to meet her burden showing a genuine issue of material fact exists to permit this case to go to a jury. As explained further herein, Hukman's opposition to summary judgment is unsupported by any evidence for the claims she brings. Instead, it contains conclusory allegations, which, even when liberally construed, cannot defeat summary judgment. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). The court addresses each claim in turn.

**A.   Hukman's Title VII discrimination claim based on national origin fails as a matter of law.**

To state a prima facie case of disparate treatment, a plaintiff must show that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably. *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 n.7 (9th Cir. 1991) (superseded by statute on other grounds). Once a prima facie case has been established, Title VII claims are then analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the burden of production then shifts to the defendant to offer evidence of legitimate nondiscriminatory reasons for the adverse employment action at issue. *Id.* The degree of proof necessary to establish a prima facie case at summary judgment is minimal and need not rise to

5

the level of preponderance of the evidence, but it must be more than conclusory allegations of discrimination. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

If the plaintiff establishes a prima facie case, the burden of production, but not persuasion, then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action. If the employer does so, then the plaintiff must show that the employer's proffered reason is merely pretext for a discriminatory motive. *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001). While the burden of persuasion always remains with the plaintiff (*Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)), this final burden shift does not necessarily impose a new burden of production. Rather, the Supreme Court has established that the factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out her prima facie case if the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). A plaintiff may raise the inference of discrimination by showing: (1) they are a member of a protected class; (2) they were qualified for their position; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside of the plaintiff's protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination. *Peterson*, 358 F.3d at 603 (citation omitted); *Lyons v. England*, 307 F.3d 1092, 1112–14 (9th Cir. 2002).

The first three prongs of a disparate treatment claim are met here. Harman does not challenge that Hukman qualifies as member of a protective class, that she was qualified for the position, or that she suffered an adverse employment action as she was terminated from her position as a Snacker's clerk. What is disputed however is whether similarly situated individuals outside of Hukman's protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination.

Hukman argues, without providing any admissible evidence in support thereof,[8] that she was treated differently because of national origin and ethnicity. Hukman's arguments fail for several reasons. First, the circumstances she cites in support of the alleged different treatment are wholly conclusory. For example, she claims—without any supporting evidence—that "Mr. Bogus"[9] and "Ms. Branson" discriminated against employees who had accents or were from the Middle East. ECF No. 42 at 5. She likewise claims that she was "constantly harassed" by Branson when she reported to work early and that Branson asked Hukman to leave early so she could start her shift early to get overtime.[10] *Id.* at 4. Even assuming this allegation to be true, there is no claim that Branson's actions were because of Hukman's national origin. Hukman also claims that other Snackers employees outside her protected class were paid more than her and did not receive write-ups for being late, or for taking long breaks. *Id.* at 17. Not only does Hukman fail to provide any evidence as to what national origin (or any other protected class) the other employees are,[11] which alone is fatal to her argument, she also fails to produce any evidence to support her allegations that they were given more favorable treatment. *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56" and "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion") (citation and internal quotations omitted);

---

[8] The court notes that in one part of her opposition, Hukman cites to her own deposition. *See* ECF No. 42 at 15. Self-serving affidavits or deposition testimony may be cognizable motions for summary judgment if they go beyond conclusions to include facts that would be admissible in evidence. *See United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999). But a conclusory, self-serving affidavit or deposition, lacking in detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact. *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

[9] Moreover, there is no explanation as to who Mr. Bogus is or why defendant would be liable for acts or actions of Mr. Bogus. However, given Hukman's pro se status, the court liberally construes that Hukman is referring to "Mr. Boggs," Hukman's supervisor at Snackers, as "Mr. Bogus."

[10] The court also notes that based on her deposition testimony, Hukman believes that a non-party named Laura Williams Anderson, who she has a long history with, directed employees at Snackers to be unfriendly to her. Hukman Dep., Def.'s Ex. K, ECF No. 35-11 at 35:19–37:19. Not only is this is an unsupported statement, but Anderson has not been identified nor named as a witness in this action.

[11] They are identified in the opposition as "Ms. Branson," "Ms. Jackson," "Mr. Devante," and "Mr. Dwayne." ECF No. 42 at 17.

*Redwind v. W. Union, LLC*, 2016 WL 3606595, at *10 (D. Or. May 2, 2016) (plaintiff's testimony based on his or her own "conjecture and speculation" is insufficient to create a genuine issue of material fact).

Further, Hukman summarily concludes that certain documents related to this case, such as her performance notice and documents seemingly related to her termination are "forged." ECF No. 42 at 7, 12. Again, Hukman offers no evidence to support these serious allegations and therefore the court does not consider this argument. *See Ramirez v. NBGI, Inc.*, 2024 U.S. Dist. LEXIS 43642, at *13 (C.D. Cal. Mar. 8, 2024) (rejecting plaintiffs' unsupported allegation that documents were either forged or created without their authority).

Hukman also complains about Harman's accusation that she was sleeping on the job, which she disputes.[12] Hukman states that her write-up for sleeping on the job was "retaliation for engaging in protected activity." ECF No. 42 at 14. But she fails to adduce any admissible evidence that she had engaged in protected activity *before* Harman wrote her up for sleeping on the job that would have led to the supposed retaliation. Rather, Hukman claims she emailed her supervisor, Mr. Boggs, to complain about Ms. Branson before December 24, 2021. *Id*. Although that complaint has been referenced, it has not been provided to the court. *See* Text messages, Def.'s Ex. E, ECF No. 35-5 at 2 (claiming she previously emailed a complaint to her supervisor about Branson); 12/25/21 Email, Def.'s Ex. F, ECF No. 35-6 (email dated July 1, 2022 claiming Hukman had emailed a complaint on December 16, 2021 against Branson); Hukman Dep., Def.'s

---

[12] Hukman's attempt to challenge the allegation that she was sleeping on the job is suspect. In her opposition, Hukman claims that "Mr. Bogus" falsified her sleeping on the job. ECF No. 42 at 18; *see also id.* at 19 (Hukman claiming the evidence does not show her sleeping on the job). But, in a text exchange with her supervisor from December 24, 2021, Hukman claim someone was brought in to put her to sleep. Texts messages, Def.'s Ex. E, ECF No. 35-5 at 2. Hukman made a similar claim during her deposition, during which she testified she does not sleep on the job (Hukman Dep., Def.'s Ex. K, ECF No. 35-11 at 44:4) while also claiming that if she did sleep, Laura Anderson poisoned her to put her to sleep. *Id.* at 105:14–17 (**Question to Hukman:** "Even if you view a video and it shows that you were sleeping, do you still maintain that it was Laura poisoning you that caused you to sleep?" **Hukman's answer:** "Yes. Laura, she – yes.").

Ex. K, ECF No. 35-11 at 40:24–43:7 (Hukman claiming she has copies of the email complaints about Branson).

In her deposition, Hukman also claims that she believed Mr. Boggs did not like Muslim people. *Id.* at 50:22–51:17. She testified that while Boggs did not say anything to her face, he made fun of her for not eating pork and gave other people ham as a gift. *Id.* But these statements are uncorroborated, self-serving, and lack detail, making them insufficient to defeat summary judgment. A conclusory self-serving statement lacking detailed facts is insufficient to create a disputed issue of material fact to defeat summary judgment. *See FTC*, 104 F.3d at 1168; *see also Baylink v. Nicholson*, 2007 U.S. Dist. LEXIS 105316, *10 (C.D. Cal. May 8, 2007) ("[p]assing comments or ambiguous remarks are not sufficient to prove pretext to survive a motion for summary judgment."); *see Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (a supervisor's comment about getting rid of "old timers" insufficient to support an inference of age discrimination); *see also Pottenger v. Potlatch Corp.*, 329 F.3d 740, 747 (9th Cir. 2003) ("[S]ome remarks lead to no reasonable inference of discrimination and thus no triable issue of material fact exists").

On the other hand, Harman proffers evidence that supports that Hukman was fired for legitimate, nondiscriminatory reasons. Specifically, Harman argues that Hukman was terminated based on their reasonable belief that she was sleeping during her overnight shifts and that she was insubordinate to Boggs when he attempted to meet with her to address concerns about her performance, which was interpreted as an unwillingness or uninterest in changing. *See generally* ECF No. 35 at 13; *see also* 12/24/2021 Employee Performance Notice, Def.'s Ex. D, ECF No. 35-4 at 2 (addressing sleeping, longer than permitted breaks, and adjusting work schedule to allow Hukman to get adequate rest). The Ninth Circuit has long held that inadequate work performance constitutes a legitimate reason for disciplinary action. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *see also Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) ("[Plaintiff's] poor job performance . . . constitute[s] a legitimate,

nondiscriminatory reason for terminating [Plaintiff's] employment with [Defendant]."). Thus, Harman has proffered legitimate and nondiscriminatory reasons for Hukman's termination. Accordingly, the burden then shifts back to Hukman to demonstrate that the facially legitimate reasons proffered by Harman are pretextual. *Reeves*, 530 U.S. at 143.

A plaintiff can establish pretext to defeat summary judgment in either of two ways: (1) by offering "very little" direct evidence of the employer's discriminatory animus; or (2) by offering "specific" and "substantial" indirect evidence tending to show that the employer's proffered reason for the dismissal is not credible. *Richards v. City of Seattle*, 32 F. App'x. 452, 454 (9th Cir. 2002) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998)). Hukman provides neither, meaning she fails to raise a triable issue of fact that Harman's legitimate, non-discriminatory reasons were pretextual. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011); *see also Richards*, 32 F. App'x. at 455 (stating that a plaintiff must raise a triable issue of fact for *each* legitimate reason proffered to survive summary judgment). Accordingly, Harman's motion for summary judgment on her Title VII claim of discrimination based on national origin is granted.

### B. Summary judgment on Hukman's retaliation claim also fails because she fails to show she engaged in protected activity.

Independent of whether discrimination has occurred, Title VII forbids employers from retaliating against an employee who seeks to bring discrimination claims against the employer. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation under Title VII requires Hukman to show that she (1) engaged in a protected activity, (2) suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). As noted above, Hukman fails to provide this court with sufficient evidence that she engaged in protected activity. The only piece of evidence that could constitute protected activity is an email from Hukman stating that she emailed Boggs a complaint that Branson was discriminating and

harassing her on December 16, 2021. *See* 12/25/21 Email, Def.'s Ex. F, ECF No. 35-6 at 2. As noted above, neither the December 16, 2021 email or complaint were provided as an exhibit in opposition to Harman's motion. That email is insufficient to demonstrate that Hukman complained that she was being discriminated against *because* of her national origin or religion. Rather, it broadly claims that Branson was discriminating and/or harassing her, but it does not identify if she reported being discriminated or harassed based on a protected class. Hukman's deposition does not fill in this critical absence of evidence. When questioned about the December 16, 2021 email, Hukman stated that she sent Boggs a complaint letter about Branson advising that Branson was harassing Hukman by arriving to the store early or by forcing Hukman to leave early so she could not get overtime. *See* Hukman Dep., Def.'s Ex. K, ECF No. 35-11 at 40:24–41:23. Hukman further testified that Boggs never responded to her letter that Branson "was putting pressure on her and…harassing [her]." *Id.* at 42:21–43:2. In neither the email nor in her deposition does Hukman claim that she reported or complained about being harassed or discriminated against on the basis of her national origin. As a result, I cannot find that she engaged in a protected activity, so her retaliation claim fails, and I thus grant Harman's summary judgment on Hukman's Title VII retaliation claim.

### IV. Conclusion

IT IS THEREFORE ORDERED that Harman's motion for summary judgment **[ECF No. 35] is GRANTED**. I further strike ECF Nos. 38 and 40 as duplicative.

The Clerk of Court is kindly directed to file the complaint [ECF No. 35-1] on the docket, to enter judgment in favor of Harman Unlimited, Inc., and to close this case.

Dated: June 12, 2024

_____
Cristina D. Silva
United States District Judge